UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN THOMPSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NUANCE COMMUNICATIONS, INC., ) <br> LLOYD CARNEY, MARK BENJAMIN, ) <br> DANIEL BRENNAN, THOMAS EBLING, ) <br> ROBERT FINOCCHIO, LAURA KAISER, ) <br> MICHAL KATZ, MARK LARET, and ) <br> SANJAY VASWANI, ) <br> ) <br> Defendants. ) <br> ) | Case No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff John Thompson ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action Nuance Communications, Inc. ("Nuance" or the "Company") and the members of Nuance's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Nuance will be acquired by Microsoft Corporation ("Microsoft") through its subsidiary Big Sky Merger Sub Inc. ("Merger Sub") (the

"Proposed Transaction").[1]

2. On April 12, 2021, Nuance and Microsoft issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated April 11, 2021 (the "Merger Agreement") to sell Nuance to Microsoft. Under the terms of the Merger Agreement, each Nuance stockholder will be entitled to receive $56.00 in cash for each share of Nuance common stock they own (the "Merger Consideration").[2]

3. On May 17, 2021, Nuance filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Nuance stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information critical to stockholders being asked to make that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants'

---

[1] Non-party Microsoft is a Washington corporation headquartered in Redmond, WA. Microsoft operates worldwide and has offices in more than 100 countries. Microsoft's common stock trades on the Nasdaq Global Select Market under the ticker symbol "MSFT." Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Microsoft.

[2] The Proposed Transaction is valued at approximately $19.7 billion.

violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Nuance.

10. Defendant Nuance is a Delaware corporation, with its principal executive offices located at 1 Wayside Road, Burlington, Massachusetts 01803 and an office located at 477 9th Avenue, San Mateo, California 94402.  Nuance's common stock trades on the Nasdaq Global Select Market under the ticker symbol "NUAN."

11. Defendant Lloyd Carney ("Carney") is Independent Chairperson of the Board and has been a director of the Company since September 2018.

12. Defendant Mark Benjamin ("Benjamin") has been Chief Executive Officer ("CEO") and a director of the Company since April 2018.

13. Defendant Daniel Brennan ("Brennan") has been a director of the Company since September 2018.

14. Defendant Thomas Ebling ("Ebling") has been a director of the Company since September 2018.

15. Defendant Robert Finocchio ("Finocchio") has been a director of the Company since April 2015.

16. Defendant Laura Kaiser ("Kaiser") has been a director of the Company since December 2017.

17. Defendant Michal Katz ("Katz") has been a director of the Company since September 2018.

18. Defendant Mark Laret ("Laret") has been a director of the Company since June 2010.

19. Defendant Sanjay Vaswani ("Vaswani") has been a director of the Company since February 2018.

20. Defendants identified in paragraphs 11-19 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On April 12, 2021, Nuance and Microsoft issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> REDMOND, Wash., and BURLINGTON, Mass. – April 12, 2021 – Microsoft Corp (Nasdaq: MSFT) and Nuance Communications, Inc. (Nasdaq: NUAN) today announced they have entered into a definitive agreement under which Microsoft will acquire Nuance for $56.00 per share, implying a 23% premium to the closing price of Nuance on Friday, April 9, in an all-cash transaction valued at $19.7 billion, inclusive of Nuance's net debt. Nuance is a trusted cloud and AI software leader

representing decades of accumulated healthcare and enterprise AI experience. Mark Benjamin will remain CEO of Nuance, reporting to Scott Guthrie, executive vice president of Cloud & AI at Microsoft. The transaction is intended to close this calendar year.

Microsoft has accelerated its efforts to provide industry-specific cloud offerings to support customers and partners as they respond to disruption and new opportunities. These efforts include the Microsoft Cloud for Healthcare, introduced in 2020, which aims to address the comprehensive needs of the rapidly transforming and growing healthcare industry. Today's acquisition announcement represents the latest step in Microsoft's industry-specific cloud strategy.

Nuance is a pioneer and a leading provider of conversational AI and cloud-based ambient clinical intelligence for healthcare providers. Nuance's products include the Dragon Ambient eXperience, Dragon Medical One and PowerScribe One for radiology reporting, all leading clinical speech recognition SaaS offerings built on Microsoft Azure. Nuance's solutions work seamlessly with core healthcare systems, including longstanding relationships with Electronic Health Records (EHRs), to alleviate the burden of clinical documentation and empower providers to deliver better patient experiences. Nuance solutions are currently used by more than 55% of physicians and 75% of radiologists in the U.S., and used in 77% of U.S. hospitals. Nuance's Healthcare Cloud revenue experienced 37% year-over-year growth in Nuance's fiscal year 2020 (ended September 2020).

Microsoft's acquisition of Nuance builds upon the successful existing partnership between the companies that was announced in 2019. By augmenting the Microsoft Cloud for Healthcare with Nuance's solutions, as well as the benefit of Nuance's expertise and relationships with EHR systems providers, Microsoft will be better able to empower healthcare providers through the power of ambient clinical intelligence and other Microsoft cloud services. The acquisition will double Microsoft's total addressable market (TAM) in the healthcare provider space, bringing the company's TAM in healthcare to nearly $500 billion. Nuance and Microsoft will deepen their existing commitments to the extended partner ecosystem, as well as the highest standards of data privacy, security and compliance.

"Nuance provides the AI layer at the healthcare point of delivery and is a pioneer in the real-world application of enterprise AI," said Satya Nadella, CEO, Microsoft. "AI is technology's most important priority, and healthcare is its most urgent application. Together, with our partner ecosystem, we will put advanced AI solutions into the hands of professionals everywhere to drive better decision-making and create more meaningful connections, as we accelerate growth of Microsoft Cloud for Healthcare and Nuance."

Beyond healthcare, Nuance provides AI expertise and customer engagement solutions across Interactive Voice Response (IVR), virtual assistants, and digital and biometric solutions to companies around the world across all industries. This

expertise will come together with the breadth and depth of Microsoft's cloud, including Azure, Teams, and Dynamics 365, to deliver next-generation customer engagement and security solutions.

"Over the past three years, Nuance has streamlined its portfolio to focus on the healthcare and enterprise AI segments, where there has been accelerated demand for advanced conversational AI and ambient solutions," said Mark Benjamin, CEO, Nuance. "To seize this opportunity, we need the right platform to bring focus and global scale to our customers and partners to enable more personal, affordable and effective connections to people and care. The path forward is clearly with Microsoft — who brings intelligent cloud-based services at scale and who shares our passion for the ways technology can make a difference. At the same time, this combination offers a critical opportunity to deliver meaningful and certain value to our shareholders who have driven and supported us on this journey."

The transaction has been unanimously approved by the Boards of Directors of both Nuance and Microsoft. The deal is intended to close by the end of this calendar year and is subject to approval by Nuance's shareholders, the satisfaction of certain regulatory approvals, and other customary closing conditions.

Upon closing, Microsoft expects Nuance's financials to be reported as part of Microsoft's Intelligent Cloud segment. Microsoft expects the acquisition to be minimally dilutive (less than 1 percent) in fiscal year 2022 and to be accretive in fiscal year 2023 to non-GAAP earnings per share, based on the expected close timeframe. Non-GAAP excludes expected impact of purchase accounting adjustments, as well as integration and transaction-related expenses. The acquisition will not impact the completion of its existing share repurchase authorization.

***The Proxy Statement Contains Material Misstatements or Omissions***

22. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Nuance's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

23. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, Evercore Group L.L.C. ("Evercore");

and (ii) Evercore's potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections and Evercore's Financial Analyses*

24.     The Proxy Statement omits material information regarding the Company's financial projections.

25.     For example, the Proxy Statement fails to disclose the unlevered free cash flows Evercore utilized in its *Sum-of-the-Parts Discounted Cash Flow Analysis* for Nuance, including the unlevered free cash flows for (i) Nuance (excluding the Nuance Dragon Ambient eXperience ("DAX")); and (ii) DAX, as well as the underlying line items and the calculation for unlevered free cash flows. The Proxy Statement similarly fails to disclose the line items underlying Nuance's unlevered free cash flows, including (i) stock-based compensation expense; (ii) taxes; (iii) changes in net working capital; and (iv) capital expenditures.

26.     The Proxy Statement also omits material information regarding Evercore's financial analyses.

27.     The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Nuance's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

28.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by Evercore; (ii) Nuance's projections utilized in the analysis, including (a)

calendar year 2021 revenue, (b) calendar year 2021E Adjusted EBITDA, (c) calendar year 2021E Adjusted EBITDA (as reduced by the Short Term Incentive Plan Expenses ("STIP")), (d) calendar year 2021 levered, after-tax free cash flows ("LFCF"), and (e) calendar year 2021 LFCF (as reduced by STIP); (iii) Nuance's net debt; and (iv) Nuance's fully diluted outstanding shares.

29. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%; (ii) terminal year unlevered free cash flow; (iii) quantification of Nuance's terminal value; (iv) Nuance's estimated net debt; and (v) the number of fully diluted shares of Nuance common stock.

30. With respect to Evercore's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered cash flows utilized in the analysis, including for (a) Nuance (excluding DAX), and (b) DAX; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0% and 17.5% to 22.5%; (iii) terminal year unlevered free cash flows; (iv) quantification of the terminal values; (v) Nuance's estimated net debt; and (vi) the number of fully diluted shares of Nuance common stock.

31. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

32. With respect to Evercore's *Selected HC & ENT Transactions Analysis* and *Selected Vertical Software Transactions Analysis*, the Proxy Statement fails to disclose: (i) identification of the selected transactions observed; (ii) the individual multiples and financial metrics for each of the selected transactions observed by Evercore; (iii) Nuance's LTM Revenue; (iv) Nuance's net debt; and (v) Nuance's fully diluted outstanding shares.

8

33. Without such undisclosed information, Nuance stockholders cannot evaluate for themselves whether the financial analyses performed by Evercore were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to vote in favor of the Proposed Transaction.

34. The omission of this material information renders the statements in the "Financial Forecasts" and "Opinion of Nuance's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Evercore's Potential Conflicts of Interest*

35. The Proxy Statement is materially deficient because it fails to disclose material information relating to Evercore's potential conflicts of interest.

36. For example, the Proxy Statement sets forth that, "[d]uring the two-year period prior to the date of its opinion, Evercore and its affiliates have provided financial advisory services to Nuance and received fees for the rendering of these services in the amount of approximately $1.4 million." Proxy Statement at 47.  The Proxy Statement, however, fails to disclose the nature of the services Evercore performed for the Company and its affiliates.

37. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38. The omission of this material information renders the statements in the "Opinion of Nuance's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Nuance stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Nuance's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion

provided by Evercore, and Evercore's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

46. . Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff repeats all previous allegations as if set forth in full.

48. The Individual Defendants acted as controlling persons of Nuance within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nuance, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Nuance's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief,

including injunctive relief, in his favor on behalf of Nuance, and against defendants, as follows:

    A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

    B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Nuance stockholders;

    C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

    E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 27, 2021                         **LONG LAW, LLC**

                                                By  */s/ Brian D. Long*
                                                       Brian D. Long (#4347)
                                                       3828 Kennett Pike, Suite 208
                                                       Wilmington, DE 19807
                                                       Telephone: (302) 729-9100
                                                       Email: BDLong@longlawde.com

                                                       *Attorneys for Plaintiff*